UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

|  |  |  |
|---|---|---|
| CRESTLINE HOTELS & RESORTS, LLC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 1:20-cv-661 (RDA/TCB) |
| | ) | |
| URBAN COMMONS, LLC, *et al.*, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## REPORT AND RECOMMENDATION

THIS MATTER is before the Court on Plaintiff Crestline Hotels and Resorts LLC's ("Plaintiff" or "Crestline") Motion for Default Judgment and Declaratory Relief against Defendants Urban Commons LLC, Taylor Woods, and Howard Wu (collectively, "Defendants") (Dkt. 18).[1] For the reasons articulated below, the undersigned U.S. Magistrate Judge recommends that the Court grant Plaintiff's motion.

### I. BACKGROUND

#### A.    Procedural Posture

Plaintiff filed this lawsuit against Defendants on June 12, 2020 for breach of contract (Count I) and declaratory relief (Count II). (Dkt. 1.) After Defendants failed to enter an appearance or respond in any fashion, Plaintiff requested the clerk's entry of default on August 12, 2020. (Dkt. 15.) The next day, the clerk entered default judgment. (Dkt. 16.) The Court then entered an order directing Plaintiff to file a motion for default judgment and notice a hearing.

---

[1] The relevant filings before the undersigned include Plaintiff's Complaint (Dkt. 1) ("Compl."); Plaintiff's Motion for Default Judgment and Declaratory Relief ("Mot. Default J.") (Dkt. 18); Plaintiff's Memorandum in Support of Motion for Default Judgment and Declaratory Relief ("Mem. Supp.") (Dkt. 19); and all attachments and exhibits submitted with those filings.

(Dkt. 17.) Plaintiff complied with this Court's order and filed a motion for default judgment on September 10, 2020[2]. (Dkts. 18, 19.) Plaintiff noticed the motion for a hearing on Friday, September 18, 2020. (Dkt. 20.) Then, the undersigned issued an order on June 2, 2020 stating:

> "[T]o proceed as cautiously and safely as possible, the Court will not hold a hearing on this matter. Instead, the Court will allow any interested party to file an objection within twenty (20) days of the date of this order. Accordingly, any objections to Plaintiff's motion for default judgment are to be filed with the Clerk's office by Thursday, October 1, 2020 at 5:00 p.m. The undersigned will then issue a Report and Recommendation concerning the default judgment without a hearing.

(Dkt. 21 at 1.)

No interested party filed a timely objection with the Clerk's office. Accordingly, the undersigned issues this Report and Recommendation to address Plaintiff's motion for default judgment.

## B.    Jurisdiction and Venue

Before the Court can render default judgment, it must have subject-matter and personal jurisdiction over the defaulting parties, and venue must be proper.

*First*, the Court has subject-matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1). A federal district court has subject-matter jurisdiction when a dispute involves "citizens of different States" and the amount in controversy "exceeds the sum or value of $75,000, exclusive of interest and costs." 28 U.S.C. § 1332(a)(1). Here, Plaintiff is a Delaware limited liability company with a principal place of business in Fairfax, Virginia. (Compl. ¶ 1.) Defendant Urban Commons is a Delaware limited liability company with a principal place of

---

[2] N.B. The Court's August 14, 2020 Order directed Plaintiff to notice a hearing for Friday, September 11, 2020. (Dkt. 17.) Plaintiff did not file its motion for default judgement until September 10, 2020 and subsequently noticed the hearing for the following week, Friday September 18, 2020. Plaintiff's failure to comply precisely with the Order, however, is not material, as no hearing took place in this matter.

business in Los Angeles, California. (Compl. ¶ 2.) Plaintiff has alleged that "on information and belief, all members of Urban Commons are citizens of California." (Compl. ¶ 2.) Defendants Taylor Woods and Howard Wu are individual residents of California. (Compl. ¶¶ 3-4.)  Plaintiff further alleges that "[n]o member of the Crestline are citizens of California." (Mem. Supp. at 6.) For purposes of diversity jurisdiction, all three defendants are citizens of California, and Plaintiff is not. Accordingly, there is complete diversity between the parties. Furthermore, the amount in controversy exceeds $75,000.00 because Plaintiff sought $3,850,000.00 in money damages, exclusive of interest, fees, and costs in its Complaint. (Compl. ¶¶ 19, 23.)

*Second*, the Court has personal jurisdiction over Defendants. The standards of federal due process and the forum state's long-arm statute must be satisfied for a federal court to have personal jurisdiction over a party. *See Tire Eng'g & Distribution, LLC v. Shandong Linglong Rubber Co.*, 682 F.3d 292, 301 (4th Cir. 2012). Federal due process permits personal jurisdiction where a defendant has "certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). Further, "a defendant should be able to anticipate being brought to court in the forum, in that the contacts must be directed at the forum state in more than a random, fortuitous, or attenuated way." *ePlus Tech., Inc. v. Aboud*, 313 F.3d 166, 176 (4th Cir. 2002). Virginia's long-arm statute, Virginia Code section 8.01-328.1, provides for personal jurisdiction to the extent that federal due process permits. *Id.* With federal due process and Virginia's long-arm statute requiring the same standard, essentially only one inquiry is required. *See id.*

Furthermore, a court may either have specific jurisdiction, which arises when the defendant's contacts with the forum state give rise to the basis of the lawsuit, or general

jurisdiction, which arises when the defendant is domiciled in the forum state or if the defendant has affiliations with the state that are so "continuous and systematic" as to render the party "essentially at home." *Fireclean LLC v. Tuohy*, No. 1:16-cv-294-JJC-MSN, 2016 WL 4414845, at *2 (E.D. Va. June 14, 2016) (citation omitted); *see also Tire Eng'g*, 682 F.3d at 301 (citation omitted).

Here, the Court has specific jurisdiction over Defendants based upon the parties' Guaranty Agreement, which provided:

> The parties stipulate and agree that the Commonwealth of Virginia has a substantial relationship to the underlying transaction related to this Guaranty and to the parties involved and this Guaranty shall be deemed made and entered into in Commonwealth of Virginia. In entering into this Guaranty, Guarantor acknowledges that it has sought, voluntarily accepted and become associated with Crestline who is headquartered in Fairfax, Virginia. Guarantor hereby expressly and irrevocably submits itself to the non-exclusive jurisdiction of the U.S. District Court for the Eastern District of Virginia, Alexandria Division and the Commonwealth and Circuit Courts of Fairfax, Virginia for the purpose of any and all disputes related to this Guaranty.

(Dkt. 1-5 at 8; Mem. Supp. at 7.) Virginia's long-arm statute confers jurisdiction over a defendant who transacts any business in Virginia. V.A. Code Ann. § 8.01-328.1(A)(1). The parties entered into the contracts at issue in Virginia and agreed to a forum selection clause. Accordingly, Defendants have availed themselves to this Court's specific jurisdiction.

***Lastly***, Plaintiff filed this lawsuit in the proper venue. Under 28 U.S.C. § 1391(b), venue is proper in a judicial district (1) "in which any defendant resides, if all defendants are residents of the State in which the district is located; or (2) "in which a substantial part of the events or omissions giving rise to the claim occurred." 28 U.S.C. § 1391(b)(1)-(2). Here, venue is proper under the second provision, as the parties entered the contracts at issue in this judicial district, pursuant to the aforementioned forum selection clause. (Compl. ¶ 6.)

4

### C.      Service of Process

Before the Court can render default judgment, it must be satisfied that the defaulting parties have been properly served.

#### 1.      *Urban Commons LLC*

Under Federal Rule of Civil Procedure 4(h)(1)(B), a plaintiff can serve a foreign or domestic unincorporated association "by delivering a copy of the summons and of the complaint to an officer, a managing or general agent, or any other agent authorized by appointment or by law to receive service of process." Fed. R. Civ. P. 4(h)(1)(B). Turning to Rule 4(e)(1), the provision allows service by "following state law . . . where the district court is located or where service is made." Fed. R. Civ. P. 4(e)(1). Under Virginia code section 13.1-1018, a "foreign limited liability company's registered agent is the limited liability company's agent for service of process." Va. Code Ann. § 13.1-1018.

Here, Plaintiff personally served Urban Common LLC's registered agent, Taylor Woods, on July 19, 2020. (*See* Dkt. 12.) Plaintiff's private process server filed an affidavit of service certifying that he personally served "Taylor Woods – Agent for Service of Process" with the Summons, Complaint with Exhibits, and Civil Cover Sheet at 826 Emerald Bay Laguna Beach, CA 92651. (Dkt. 12.) Upon review of the affidavit and applicable law, the undersigned is satisfied that Plaintiff effected proper service on Urban Commons, LLC.

#### 2.      *Taylor Woods and Howard Wu*

Rule 4(e)(1) allows a plaintiff to serve an individual by "following state law for serving a summons in an action brought in courts of general jurisdiction in the state where the district is located or where service is made." Fed. R. Civ. P. 4(e)(1). Of relevance here, Virginia code section 8.01-296 authorizes personal service on an individual by "delivering a copy thereof in

writing to the party in person." Va. Code Ann. § 8.01-296(1).

Here, Plaintiff, by way of private process server, personally served Mr. Woods and Mr. Wu at their respective residences. (*See* Dkts. 13, 14.) Again, Plaintiff's private process server filed affidavits of service for each defendant stating that he served Mr. Woods on July 19, 2020 and Mr. Wu on July 16, 2020. (*Id.*) Accordingly, the undersigned is satisfied that Plaintiff properly served Defendants via personal service.

## II.  FINDINGS OF FACT

Upon a full review of the pleadings and record in this case, the undersigned finds that Plaintiff has established the following facts.

On February 14, 2020, the parties entered into three hotel management agreements ("Management Agreements") relating to the management of the Renaissance Denver Stapleton hotel, the Sheraton Denver Tech hotel, and the Holiday Inn Denver East Stapleton hotel.[3] (Compl. ¶¶ 8-9.) In consideration for each agreement, and for a fourth relating to Hilton National Airport hotel, Crestline agreed to pay the affiliates of Urban Commons ("Owners") "Key Money" payments totaling $5,800,000.00. (Compl. ¶ 10.) To date, Crestline has paid $3,850,000.00 of the Key Money. (*Id.*) $150,000.00 of the Key Money Crestline owed was extinguished as a result of a default under the management agreement relating to the Sheraton Denver Tech hotel. (*Id.*) Additionally, another $1,800,000.00 is not yet due under the management agreement relating to the Hilton Nashville Airport Hotel. (*Id.*)

Along with the Management Agreements, the parties entered into a Guaranty Agreement in which Defendants agreed to guarantee "all monetary obligations" to Crestline under the

---

[3] Plaintiff attached to the complaint true and correct copies of each management agreement as Exhibits A-1, A-2, and A-3. (*See* Dkts. 1-2, 1-3, 1-4.)

6

Management Agreements.[4]  (Compl. ¶¶ 11, 12.) As discussed above, the Guaranty Agreement contained a forum selection clause. *See supra* part I.

On May 5, 2020, Crestline requested from the Owner of the Holiday Inn Denver East Stapleton hotel required working capital for the hotel in the amount of $283,196.10.[5] (Compl. ¶ 13.) The parties had agreed in Section 7.01B of the Management Agreements that the Owners would have five business days to fund requested required capital. (Compl. ¶ 14.) The Owner failed to fund this requested working capital by the May 12, 2020 deadline, rending Defendants in default pursuant to Section 16.01(G) of the Management Agreements. (*Id.*) This section enumerates what constitutes "Default" under the agreements, including:

> The failure of Owner to provide to Management Company sufficient Working Capital to operate the Hotel as required by Article VII within five (5) business days after Owner's receipt of a Funds Request from Management Company, which such Funds Request has not been reasonably contested by Owner.

(Compl. ¶ 14; Exhibits A-1, A-2, A-3.) Further, Section 16.02 of the Management Agreements provides:

> Upon the occurrence of any Default by a defaulting party under Section 16.01 E, F, G, or H, such Default shall constitute an 'Event of Default' under this Agreement if the defaulting party fails to cure such Default within the respective cure or payment period (as specified in the applicable subsection) after written notice from the non-defaulting party specifying such Default and demanding such cure or payment.

(Compl. ¶ 15; Exhibits A-1, A-2, A-3.)

Additionally, Section 22.15(B) of the Management Agreements states that the "Key Money Amount shall become immediately due and payable by Owner to Management Company" in the event of default. (Compl. ¶ 16; Exhibits A-1, A-2, A-3.)

---

[4] Plaintiff attached to the complaint a true and correct copy of the Guaranty Agreement as Exhibit B. (*See* Dkt. 1-5.)

[5] Plaintiff attached to the complaint a true and correct copy of the request for working capital as Exhibit C. (*See* Dkt. 1-6.)

Moreover, Plaintiff alleges that Defendant's default immediately triggered its obligation to pay Crestline the full $3,850,000.00 in Key Money. (Compl. ¶ 17.) Still, Plaintiff sent Defendants several written demands for payment.[6] (*Id.*) Plaintiff also sent Defendants written demands for the $3,850,000.00 in Key Money and the $283,196.10 needed as working capital. (Compl. ¶ 18.)[7]

## III.  EVALUATION OF THE PLAINTIFF'S COMPLAINT

When a defendant has defaulted, the well-pleaded allegations of facts set forth in the plaintiff's complaint are deemed admitted. *JTH Tax, Inc. v. Grabert*, 8 F. Supp. 3d 731, 736 (E.D. Va. 2014) (citing *Ryan v. Homecomings Fin. Network*, 253 F.3d 778, 780 (4th Cir. 2001)). However, the defaulting party is not deemed to admit conclusions of law or "allegations regarding liability that are not well-pleaded." *Balt. Line Handling Co. v. Brophy*, 771 F. Supp. 2d 531, 540 (D. Md. 2011) (internal quotation marks and citations omitted)). As a result, before entering default judgment, the Court must evaluate the plaintiff's complaint against the standards of Federal Rule of Civil Procedure 12(b)(6) to ensure that the complaint properly states a claim upon which relief can be granted. *GlobalSantaFe Corp. v. Globalsantafe.com*, 250 F. Supp. 2d 610, 612 n.3 (E.D. Va. 2003).

Here, Plaintiff brought breach of contract claims against the Defendants (Count I) and a claim for declaratory relief (Count II). The undersigned will address each Count in turn.

### 1.      *Breach of Contract (Count I)*

Under Virginia law, a plaintiff must show three elements to successfully bring a claim for breach of contract: "(1) a legally enforceable obligation of a defendant to a plaintiff; (2) the

---

[6] Plaintiff attached to the complaint as Exhibits D-1, D-2, and D-3 true and correct copies of the written demands. (*See* Dkts. 1-7, 1-8, 1-9.)

[7] Plaintiff attached to the complaint as Exhibit E true and correct copies of the written demands. (*See* Dkt. 1-10.)

defendant's violation or breach of that obligation;" and (3) "injury or damage to the plaintiff caused by the breach of obligation." *Squire v. Va. Hous. Dev. Auth.*, 758 S.E.2d 55, 60 (Va. 2014) (quoting *Filak v. George*, 594 S.E.2d 610, 614 (Va. 2004)).

Similarly, to recover under a guaranty agreement, "the plaintiff must prove: (1) the existence and ownership of the guaranty contract; (2) the terms of the primary obligation; (3) default on obligation by the primary debtor; and (4) nonpayment of the amount due from the guarantor under the terms of the guaranty contract." *Comm 2006-C8 Coveside Lane, LLC v. Empirian Chesapeake, LLC*, 2013 WL 12138899, at *2 (E.D. Va. Aug. 23, 2013) (citing *McDonald v. Nat'l Enters., Inc.*, 547 S.E. 2s 2014, 207 (Va. 2001)). Under these standards, the undersigned finds that Defendants have breached the terms of both the Management Agreements and the Guaranty Agreement.

*First*, Plaintiff must establish that Defendants had a legally enforceable obligation to Crestline. Here, the Complaint alleges that Defendants collectively entered into three management agreements and a guaranty agreement with Plaintiff. (Compl. ¶ 8.) As part of these agreements, Defendants personally and unconditionally guaranteed full and timely payment of required working capital and the full Key Money amount in the event of default. Specifically, Defendants "unconditionally and irrevocably" agreed to "[guarantee] to Crestline, to pay and perform when due the Obligations," and to "pay on demand the Expenses." (*See* Dkt. 1-5 at 1.) The first paragraph of the Guaranty Agreement lists Taylor Woods, Howard Wu, and Urban Commons, LCC as joint and severally liable for the agreement. (*Id.*) Further, both Mr. Woods and Mr. Wu signed the agreement in their individual capacities as a guarantors. (*Id.* at 11-14.)

Upon review of these documents, the undersigned determines that Defendants have legally enforceable obligations to Crestline under the Management Agreements and the Guaranty

Agreement.

*Second*, Plaintiff must demonstrate that Defendants breached their legal obligations, rendering them in default. In the Complaint, Plaintiff alleges that Defendants breached the Management Agreements when they failed to fund Crestline's request for working capital within five days, and upon Crestline's multiple demands. (Compl. ¶¶ 17-19.) And, Defendants breached the Guaranty agreement when they declined to pay the Key Money amount upon default. The terms of the Management Agreements rendered Defendants in default upon nonpayment of required working capital. (Compl. ¶¶ 14-16.) Upon such default, Defendants were obligated under the Management Agreements and the Guaranty Agreements to repay the Key Money and the requested working capital. As a result, the undersigned finds that Defendants breached their payment obligations under each contract and defaulted under the terms of the Guaranty Agreement.

*Finally*, Crestline easily demonstrates that it has been financially damaged because of Defendants' breaches and has not repaid the amount due under the Guaranty Agreement. In its Complaint, Crestline alleged that it has been damaged in the amount of $3,850,00.00, and that it never received the $283,196.10 in requested working capital. (Compl. ¶¶ 13, 25.)

In sum, Plaintiff has adequately plead breach of contract claims against Defendants upon which relief can be granted under Virginia law.

2.    *Declaratory Judgment (Count II)*

Plaintiff next seeks a declaration that under the Guaranty Agreement, Defendants are obligated to fund the requested working capital for the hotels in light of their breach of Section 7.01 of the Management Agreements. (Compl. ¶ 35; Mot. Default J. ¶ 13.)

Under the Declaratory Judgment Act, 28 U.S.C. § 2201(a), a district court, in a case or

controversy otherwise within its jurisdiction, "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." *Penn–America Ins. Co. v. Coffey,* 368 F.3d 409, 412 (4th Cir. 2004). The decision regarding whether to hear a federal declaratory judgment action is discretionary. *Id.* A declaratory judgment action is appropriate "when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and . . . when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Centennial Life Ins. Co. v. Poston*, 88 F.3d 255, 256 (4th Cir. 1996).

The Fourth Circuit has set forth factors which might require a district court to decline to entertain a declaratory judgment action. *See Aetna Cas. & Sur. Co. v. Ind-Elec. Co.*, 139 F.3d 419, 423 (4th Cir. 1998). These factors include (1) the general utility of the declaratory relief sought; (2) the strength of the state's interest in having a state court decide the issues raised; (3) whether a state court can resolve the issues more efficiently; (4) any unnecessary entanglement between the federal and state court systems because of overlapping issues of fact or law; and (5) whether the parties are using the declaratory judgment action for 'procedural fencing,' for example, to provide another forum in a race for *res judicata,* or to obtain a federal hearing in a nonremovable case. *Id.*

Here, a default judgment would clarify the Defendant's obligation to perform under the terms of the Management Agreements and the Guaranty Agreement. None of the above factors weigh against this Court's issuance of declaratory judgment, and the undersigned is unaware of any related state court proceedings. Accordingly, the undersigned recommends that the Court issue a declaration that Defendants are obligated to fund the requested working capital pursuant to the Guaranty Agreement and in light of Defendant's breach of Section 7.12 of the

Management Agreements.

## IV.  REQUESTED RELIEF

At this juncture, Plaintiff requests that the Court enter default judgment against Defendants, jointly and severally, for (1) $3,850,000.00, the Key Money amount, with prejudgment interest at the rate of $632.88 per day starting from May 13, 2020 and (2) $41,192.20 in in attorneys' fees, $1,845.16 in costs, and prejudgment interest at a rate of $2.95 per day starting on July 27, 2020, and post-judgment interest. (Mot. Default J. at 14, Exhibits 1 and 2.) Plaintiff also requests a declaratory judgment that Defendants are obligated to fund Plaintiff's request for $283,196.10 in working capital. The undersigned will address each form of relief in turn.

### A.  Compensatory Damages

First, Plaintiff seeks the $3,850,000.00 in Key Money, as well as prejudgment interest. In contract actions, plaintiffs are entitled to be put in as good of a position as they would have been had the contract been performed. *See, e.g.*, *Nichols Const. Corp. v. Va. Mach. Tool Co.*, 661 S.E.2d 467, 471 (Va. 2008). A plaintiff is therefore entitled to its actual loss sustained. *Dominion Res., Inc. v. Alstom Power, Inc.*, 825 S.E.2d 752, 756 (Va. 2019). As a result, a plaintiff is not "allowed to be put in a better position than he would have been had the wrong not been done and the contract not been broken." *Orebaugh v. Antonious*, 58 S.E.2d 873, 875 (Va. 1950).

Further, the rationale behind awarding prejudgment interest "is to ensure that an injured party is fully compensated for its loss." *City of Milwaukee v. Cement Div., Nat'l Gypsum Co.*, 515 U.S. 189, 196 (1995). When awarding prejudgment interest, district courts have discretion with regard to the interest rate and the date at which interest begins to accrue. *World Fuel Servs. Trading, DMCC v. M/V HEBEI SHIJIAZHUANG*, 12 F. Supp. 3d 810, 813 (E.D. Va. 2014)

12

(citations omitted).

Here, as established above, the Management Agreements provided for Defendants to pay Crestline the Key Money Amount in the event of default. (*See* Dkt. 19-1 Hoganson Aff.) And, as discussed above, Defendants were in default under the Management Agreements when they failed to fund Crestline's requested working capital within five days, and upon Crestline's additional demands. In lieu of Defendant's default, Plaintiff is entitled to be compensated for the Key Money it has already paid to the breaching Defendant. Additionally, prejudgment interest starting from the date of Crestline's demand, May 13, 2020, is appropriate in order to fully compensate Crestline for Defendants' breach. Defendants were in breach after they declined to pay Crestline's requested working capital within five days. Crestline, however, sent multiple demands in the hopes that Defendants would cure the breach. Nevertheless, Defendants failed to cure their breach and the undersigned finds the Key Money amount and prejudgment interest at a rate of $632.00 a day appropriate. (*See* Dkt. 19-1 Hoganson Aff.)

### B.   Reasonable Costs and Fees

Next, Plaintiff requests that the Court award reasonable attorneys' fees and costs. Parties may contract away the "American rule" for attorneys' fees and instead "adopt[] provisions shifting fees to the losing party in disputes involving the contract." *Dewberry & Davis, Inc. v. C3NS, Inc.* 723 S.E.2d 239, 243 (Va. 2012). Here, the Guaranty Agreement contains fee-shifting provisions providing that Plaintiff is entitled to the payment of "all reasonable third-party attorneys' fees and expenses and all other costs and expenses of any kind." (Mot. for Default J. at 14; Dkt. 1-5 at 2.) Additionally, the Guaranty Agreement provides for Defendants to pay for "expenses" Crestline incurs attempting to collect from Defendants. (Mot. for Default J. at 14; Dkt. 1-5 at 2.) And, if Crestline pays such expenses, "interest at the lesser of the (i) interest rate

13

allowed by the applicable usury laws; of (ii) Prime Rate plus three percent (3%) on any such payment from the date thereof until repayment of Crestline in full." (*Id.*)

In the affidavit attached as Exhibit 2 to Plaintiff's supporting memorandum, Plaintiff requests that the Court award a total of $41,192.20 in attorney's fees and $1,846.16 in costs. (*See* Dkt. 19-2 Garfinkel Aff.) The attorney's fees cover the fees of five attorneys and one non-attorney legal professional at Eckert Seamans with hourly rates ranging from $160.00-$495.00 depending on experience and job title. (*Id.* at 2-3.) Costs incurred include filing fees, service of process fees, postage, computer-assisted legal research, charges by government agencies for furnishing copies of filings, and notary fees. (*Id.* at 4.)

Upon review of the supporting affidavit and the incurred fees and costs, the undersigned finds that the fees and costs are reasonable. Accordingly, the undersigned recommends that the Court award Plaintiff $43,038.36 in fees and costs.[8]

### C.   Declaratory Relief

Finally, Plaintiff seeks declaratory judgment that Defendants are obligated to fund Plaintiff's request for $283,196.10 in working capital. As articulated above, declaratory judgment is appropriate in this case. Further, Defendants were clearly obligated under the Management Agreements and Guaranty Agreements to fund Plaintiff's request within five business days. (Compl. ¶ 14; Exhibits A-1, A-2, A-3.) As such, the undersigned recommends that the Court declare that Defendants are obligated to fund the working capital as requested by Crestline.

---

[8] The undersigned recommends that post-judgment interest accrue at the rate for federal judgments on the total judgment amount entered by the Court (including money damages, accrued interest, and fees and costs).

V. Recommendation

For the reasons articulated above, the undersigned recommends that the Court enter an order granting Plaintiff's Motion for Default Judgment (Dkt. 18), thereby entering default judgment in favor of Plaintiff and against Defendants Urban Commons, LLC, Taylor Woods, and Howard Wu. Further, the undersigned recommends that the Court award Plaintiff (1) $3,850,000.00, the Key Money amount with prejudgment interest at the rate of $632.88 per day starting from May 13, 2020 and (2) $41,192.20 in in attorneys' fees, $1,845.16 in costs, and prejudgment interest at a rate of $2.95 per day starting on July 27, 2020.[9] (Mot. Default J. at 14, Exhibits 1 and 2.) The undersigned also recommends that the Court declare that Defendants are obligated to fund Plaintiff's request for $283,196.10 in working capital.

VI. Notice

The parties are advised that objections to this Report and Recommendation, pursuant to 28 U.S.C. § 636 and Rule 72(b) of the Federal Rules of Civil Procedure, must be filed within fourteen (14) days of its service. Failure to object to this Report and Recommendation waives appellate review of any judgment based on it.

/s/
_____
THERESA CARROLL BUCHANAN
UNITED STATES MAGISTRATE JUDGE

October 2, 2020
Alexandria, Virginia

---

[9] As noted above, the undersigned recommends that post-judgment interest accrue at the rate for federal judgments on the total judgment amount entered by the Court (including money damages, accrued interest, and fees and costs).